# Smythe *v.* O'Brien & Ashley.

*Contract—Attorney at law—Fraud—Account—Equity.*

On a bill in equity against two attorneys to account for the sum of $8,000, it appeared that the plaintiff had authorized the defendants in writing to exchange certain real estate owned by him for stock in a corporation which he was very desirous of acquiring, and in addition to the real estate to offer the sum of $8,000 for the stock. He agreed in writing to allow defendants as compensation for their services any sum that they might be able to save out of the cash payments of $8,000. The attorneys effected the exchange without any cash payment and retained the $8,000 without revealing to the plaintiff the terms of the exchange. There was no evidence that the agreement had been procured from plaintiff by any fraud or concealment. *Held*, that the bill was properly dismissed.

Argued Oct. 26, 1900. Appeal, No. 138, Oct. T., 1900, by plaintiff, from decree of C. P. No. 2, Allegheny Co., April T., 1900, No. 91½, dismissing bill in equity in case of H. E. Smythe v. Charles A. O'Brien and Charles W. Ashley, trading as O'Brien & Ashley. Before McCOLLUM, C. J., MITCHELL, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Bill in equity for an account.

FRAZER, J., filed the following opinion:
The bill in this case was filed for the purpose of compelling

the defendants to account for and pay over to plaintiff the sum of $8,000, which sum plaintiff claims defendants unlawfully withheld from him. From the bill, answer and testimony we find the following facts :

1. That the plaintiff, H. E. Smythe, prior to October 27, 1899, was secretary and treasurer of the S. R. Smythe Company, a corporation engaged in the business of "engineering and contracting," with offices in the Park Building, Pittsburg, and the owner of 133 shares of its capital stock ; that about November 1, 1899, he succeeded his brother, S. R. Smythe, who died shortly before that date, as president of the company, and still occupies that position.

2. That the defendants, Charles A. O'Brien and Charles W. Ashley, are both members of the Allegheny county bar, and are now and have been for some time practicing their profession as copartners under the firm name of O'Brien & Ashley.

3. That Samuel R. Smythe, the brother of plaintiff, and until his death the president of the S. R. Smythe Company, was in his lifetime the owner of four certain pieces of real estate situate in the twentieth ward, Pittsburg, being Nos. 5523, 5525, 5534 and 5536 Centre avenue, also 137 shares of the capital stock of the Lawrence Glass Company, and also four fifths (600 shares) of the entire capital stock of the S. R. Smythe Company ; that the par value of the shares of the S. R. Smythe Company is $50.00.

4. That Samuel R. Smythe died on October 27, 1899, testate, and by his will dated September 11, 1899, which was duly probated and recorded, bequeathed to plaintiff 425 shares of the capital stock of the S. R. Smythe Company, and to his sister, Mrs. Annie Dietrich, 175 shares of the stock of that company ; that the testator also bequeathed to Mrs. Dietrich 137 shares of the capital stock of the Lawrence Glass Company, and devised to the plaintiff and Mrs. Dietrich the four houses and lots on Centre avenue in equal shares.

5. That plaintiff, being desirous of becoming the owner of the 137 shares of Lawrence Glass Company stock, and the 175 shares of the S. R. Smythe Company stock bequeathed to his sister, Mrs. Dietrich, and not being on friendly terms with her, employed defendants to conduct negotiations with her for the purchase of the same, and suggested to defendants that in con-

sideration of a transfer to him by Mrs. Dietrich of said stock, he would convey to her his one-half interest in the Centre avenue properties and also pay the sum of $6,000 in cash; that after interviews between plaintiff and defendants in regard to compensation for their services, the following contract was entered into, viz:

"PITTSBURG, PA., Nov. 23, 1899.

"MESSRS. O'BRIEN & ASHLEY:

"Gentlemen: I hereby authorize and empower you to negotiate with my sister, Mrs. Annie Dietrich, for the purchase from her of the Lawrence Glass Company stock and the 175 shares of the S. R. Smythe Company stock bequeathed to her by my deceased brother, S. R. Smythe; and I further authorize and empower you to purchase said blocks of stock upon the following terms: I will convey to my said sister all my undivided one-half interest in the real estate of my deceased brother, and will also pay in cash the sum of eight thousand dollars ($8,000.00). I further agree that if you succeed in obtaining a transfer of said stocks to me for the said conveyance of my interest in said real estate, and the sum of $8,000.00, to allow you as compensation for your services, any sum that you may be able to save out of the cash payment of $8,000.00 above mentioned as a consideration for said transfer. And it is fully understood that I am to secure title and possession to said stocks without any further payment or liability to you for services or otherwise in this matter.

"Yours respectfully,

"H. E. SMYTHE."

6. That previous to the execution of the foregoing agreement defendants had, at the request of plaintiff, seen Mrs. Dietrich's attorney and advised him that plaintiff would purchase the stocks above referred to if satisfactory terms could be agreed upon; at that time terms were not, however, discussed; that immediately after the agreement was signed, the defendants had several interviews with the attorney for Mrs. Dietrich, without being able to agree on terms; that on December 5, Mrs. Dietrich, together with her husband and her attorney, met the defendants at their office and agreed to transfer the Lawrence Glass Company stock and the S. R. Smythe stock to plaintiff

for his one-half interest in the Centre avenue properties; this agreement was at once carried into effect by the execution and delivery of a deed for his interest in the properties, and a transfer of the stocks to plaintiff by Mrs. Dietrich.

7. That the plaintiff's one-half interest in the Centre avenue real estate .was worth about $20,000; that the 137 shares of Lawrence Glass Company stock was worth about the same amount, and the S. R. Smythe stock was worth about $8,750, although only appraised at $5,950 ($34.00) per share, on information given to the appraisers by plaintiff.

8. That at the time plaintiff executed and delivered to defendants for delivery to Mrs. Dietrich his deed for his one-half interest in the Centre avenue real estate, he also delivered to him his check payable to their order for the sum of $8,000; that no portion of the funds realized by defendants on the check was paid to Mrs. Dietrich, but the whole thereof was retained by them as compensation for their services in pursuance of their agreement with plaintiff of November 23, 1899.

9. That plaintiff and Mrs. Dietrich were both satisfied with their bargain; that plaintiff at the time of the exchange made no inquiry as to the amount of cash Mrs. Dietrich was to receive, nor was he informed by defendants that no portion of the $8,000 was to be paid to her; that he first learned of the terms upon which the exchange had actually been made about December 22, and thereupon made demand upon defendants for repayment, and upon refusal by them to refund, filed the bill in this case.

10. The plaintiff is a man of large business experience, is president of a corporation whose business aggregates between $300,000 and $400,000 annually; is accustomed to making bargains and drawing contracts and perfectly understood the nature and extent of his agreement of November 23, with defendants.

11. That the defendants made no false or misleading representations to plaintiff for the purpose of inducing him to enter into the agreement of November 23, 1899.

12. That the plaintiff had more information regarding the value of the Smythe Company stock and the glass company stock than either Mrs. Dietrich or the defendants; that on account of unfriendly relations existing between himself and

Mrs. Dietrich and her husband, he was especially anxious to acquire her interest in the Smythe Company stock.

### CONCLUSIONS OF LAW.

In this case it is not our duty to reform the contract between the plaintiff and the defendants; we are limited to determining whether or not the defendants acted in good faith and without imposing upon or misrepresenting facts to the plaintiff for the purpose of inducing him to execute the agreement of November 23, 1899.

Whether the services to be rendered by defendants under the terms of the agreement were strictly legal services or not, we think is immaterial. The parties had a right to make the contract, and under the circumstances it is valid and binding upon them, unless the testimony establishes deception or misrepresentation on the part of the defendants to induce its execution by plaintiff, or that plaintiff did not fully understand the full force of its terms.

The evidence, we think, fails to show either bad faith or deception on the part of defendants; on the other hand it clearly establishes a strong desire on plaintiff's part to acquire the stocks bequeathed to his sister. Both stocks were valuable, the S. R. Smythe stock was of special value to plaintiff because of his desire to become the head of the company and continue its business as its chief officer, and for the further reason that it was undesirable on account of the unfriendly relations at that time existing between himself and his sister and her husband, to have them associated with him in business.

In regard to the glass company stock, the plaintiff had information concerning its earning power not possessed by either his sister or defendants, and in addition to its dividend paying qualities, its probable early consolidation with other companies, which was unknown to both his sister and defendants, gave it an additional value.

For these reasons plaintiff was anxious to become the owner of these stocks; under the circumstances he considered their value to him to be greatly in excess of his interest in the Centre avenue real estate. He was extremely anxious to become possessed of the stocks at the earliest possible moment, and as an inducement to defendants to avoid unnecessary delay in the ne-

gotiations with his sister, executed the agreement of November 23, 1899, remarking to Mr. Ashley at the time he signed it, " You have got your contract now, I don't give a damn what you make out of it, so that you get my stocks." It seems to me that it was undoubtedly plaintiff's anxiety to become the owner of the stocks, and not deception or misrepresentation upon the part of defendants that induced him to execute the agreement. He certainly understood the contents of the paper, he discussed the contents with Mr. Ashley before signing, and for the purpose of fixing precisely the amount of his liability increased the cash payment from $6,000 to $8,000, and provided that defendants' compensation for services must be saved out of that sum.

Although the amount received by defendants for their services is largely in excess of what would be recoverable on a quantum meruit, it is not beyond the terms of the agreement, and the agreement having been signed by plaintiff with a full knowledge of its contents, and without deception or misrepresentation upon the part of defendants, it follows, and we so find, that the plaintiff is not entitled to the equitable relief prayed for, and the bill should be dismissed at his costs.

*Error assigned* was the decree dismissing the bill.

*S. B. Donaldson*, for appellant.—The burden of proving affirmatively the fairness and validity of the agreement between appellant and appellees is upon the appellees : Darlington's App., 86 Pa. 512; Miskey's App., 107 Pa. 611; Stepp v. Frampton, 179 Pa. 289; Darlington's Est., 147 Pa. 624; Finch v. Conrade, 154 Pa. 326; Greenfield's Est., 14 Pa. 505.

Where an attorney acts in bad faith, he forfeits all claim to any compensation whatever: Balsbaugh v. Frazer, 19 Pa. 95; Shoemaker v. Stiles, 102 Pa. 549.

*J. M. Swearingen*, for appellee.—The findings of the lower court are conclusive: Com. v. Stevens, 178 Pa. 543; Hancock v. Melloy, 187 Pa. 371.

PER CURIAM, January 7, 1901:
This was a suit in which the plaintiff sought to recover from

the defendants the sum of $8,000, with interest from December 5, 1899. It appears that the efforts he made to obtain possession of the money he coveted was directly opposed to his written agreement with the defendants concerning it. That he could not deny his agreement with them was clear. It was therefore necessary for him to aver in the bill filed that the defendants resorted to artifice, misrepresentation and fraud to obtain from him the agreement aforesaid. The material averments in the bill were met by the defendants with plain and positive denials. The issue thus made was followed by testimony presented by the contending parties in support of their respective claims. It was carefully listened to, examined and duly considered by the learned judge who presided at the hearing, and on whom devolved the duty of finding the facts and stating the conclusions of law applicable to them. In his well considered opinion, including his findings of fact and conclusions of law, he directly held that the defendants made no false or misleading representations to plaintiff for the purpose of inducing him to enter into the agreement of November 23, 1899, and that his bill should be dismissed. The bill was accordingly dismissed with costs. In the disposition of the case by the learned judge we find no error.

Decree affirmed at plaintiff's costs.